UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

JDM IMPORT CO. INC., MG WORLDWIDE LLC, and ASIA PACIFIC JEWELRY, L.L.C.

                 Plaintiffs,

– against –

SHREE RAMKRISHNA EXPORTS PVT., LTD, AMIT SHAH, and THE JEWELRY CO.,

                 Defendants.

------------------------------------------------------------x

Case No.: 20-cv-08759 (VEC)

**AMENDED COMPLAINT**

**JURY TRIAL REQUESTED**

      Plaintiffs JDM Import Co. Inc. ("JDM"), MG Worldwide LLC ("MG Worldwide" or "MGW"), and Asia Pacific Jewelry, L.L.C. ("Asia Pacific," together with JDM and MG Worldwide, the "JDM Entities" or "Plaintiffs"), by their attorneys, Moses & Singer LLP, as and for their amended complaint against Defendants Shree Ramkrishna Exports Pvt., Ltd, Amit Shah, and The Jewelry Co. ("Defendants"), allege as follows:

## PRELIMINARY STATEMENT

    1.    This action arises out of the intentional and brazen efforts of an Indian group of companies and their unscrupulous principals to interfere with and steal the hard-earned business of a family-owned New York luxury goods and jewelry business.

    2.    Following the break-up of a joint venture which included the parties, Defendants undertook a campaign of intentional interference with some of Plaintiffs' most lucrative business relationships.

3.      Defendants' targeted deception, wrongful interference, unfair competition and unjust enrichment caused a significant deterioration in these business relationships and at least $6,000,000 (six million dollars) in damages, which Plaintiffs seek to rectify by this action.

## THE PARTIES

4.      JDM is a domestic business corporation authorized to do business in the State of New York with a principal place of business at 115 West 45th Street, 9th Floor, New York, New York 10036.

5.      MGW is a domestic limited liability company authorized to do business in the State of New York with a principal place of business at 115 West 45th Street, 9th Floor, New York, New York 10036.

6.      Asia Pacific is a domestic limited liability company authorized to do business in the State of New York with a principal place of business at 115 West 45th Street, 9th Floor, New York, New York 10036.

7.      Upon information and belief, Amit Shah is an individual residing in India.  Shah is the Chief Executive Officer of The Jewelry Co.

8.      Upon information and belief, The Jewelry Co. is a foreign entity based in India and organized under the laws of India.  The Jewelry Co. is a division of Shree Ramkrishna Exports Pvt. Ltd ("SRK").

9.      Upon information and belief, SRK is a foreign entity based in India and organized under the laws of India.

10.     SRK and The Jewelry Co. controlled and directed TJC Jewelry, Inc. ("TJC NY"), their agent in New York and a corporation authorized to do business in New York, which at all relevant times herein had maintained an office within and operated out of Plaintiff JDM's offices

2

at 115 West 45th Street, 9th Floor, New York, New York.  TJC NY's current office is located at 10 West 46th Street in New York City.

## JURISDICTION AND VENUE

11. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity and the amount in controversy exceeds $75,000.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## FACTS

13. The JDM Entities are a New York family-owned jewelry business which sells wholesale jewelry to major retailers in New York and around the United States.

14. The JDM Entities' clients include Signet Jewelers, Macy's, Helzberg's Diamond Shops, and numerous other well-known retailers of fine jewelry.

15. Signet Jewelers has been a customer of the JDM Entities since 2003.

16. Signet Jewelers bought the "Zales" brand of jewelry in 2014.

17. Zales has been a customer of the JDM Entities since 2002.

18. On or about April 1, 2015, the JDM Entities and other JDM-related entities entered into a joint venture with SRK and SRK-related entities (including defendant The Jewelry Co.) (the "Joint Venture" or "JV"), with the intent of creating a worldwide diamond jewelry business.

19. From 2015 through 2017, Defendants manufactured goods to Plaintiffs' specifications.

20. Defendants possessed the models, designs/CADs, tooling, and other information required to make the exact types of jewelry requested by Plaintiffs' clients, including Signet/Zales.

21. From 2015 through 2017, Defendants regularly sent manufactured goods to TJC NY at Plaintiff JDM's New York office for re-packaging and delivery to customers in the United States.

22. From mid-2015 through mid-2017, Defendant Amit Shah, principal of The Jewelry Co., spent approximately one out of every six weeks working at the JDM Entities' office in New York.

23. In or about August, 2017, without warning, Defendants unilaterally purported to terminate the Joint Venture as of the end of August 2017.

24. Defendants advised Plaintiffs that they would continue to manufacture and ship goods to Plaintiffs.

25. Between August and October 2017, Plaintiffs had placed and continued to place orders, including orders for Signet/Zales, with Defendants.

26. Defendants accepted Plaintiffs' orders, including orders for goods to be manufactured for Signet/Zales.

27. Plaintiffs provided Defendants the knowledge, specifications, and other information required to manufacture the orders.

28. Defendants controlled the manufacturing and distribution to Plaintiffs of the orders that Plaintiffs had placed, including of orders for Signet/Zales.

4637039 018256.0101

29.  Using this information and control, Defendants began a deliberate and concerted effort to wrongfully interfere with the JDM Entities' existing and prospective business relationships, including those with Signet/Zales.

30.  For example, on October 27, 2017, Defendant Shah wrote an e-mail to several employees of Signet Jewelers (the owner of Zales), stating in pertinent part:

> I am sure you are aware that the partnership between MGW and SRK (us) has been dissolved and unfortunately it has not ended well.
>
> **I understand that a lot of your PO's and orders are held up in production which I don't think MGW will be able to deliver this season.**
>
> I have a proposal for you to help you in this situation….

31.  Defendants were responsible for Defendant Shah's claimed "h[o]ld up in production" of Signet/Zales' orders, and sought to divert Signet/Zales' business from Plaintiffs to themselves.

32.  Upon information and belief, others at Signet/Zales became aware of the contents of Defendant Shah's e-mail.

33.  Upon information and belief, Defendants communicated further with Signet/Zales about Defendant Shah's "proposal".

34.  By early October, it became apparent to Plaintiffs that Defendants would not fulfill Plaintiffs' orders.

35.  Defendants did not fulfill Plaintiffs' orders, including the orders for Signet/Zales.

36.  Plaintiffs were forced to scramble to locate a new manufacturer just prior to the 2017 holiday season.

37.  Although Plaintiffs located another manufacturer, Defendants' conduct damaged Plaintiffs' relationship with Signet/Zales, including by delaying Plaintiffs' production and delivery of Signet/Zales' orders.

4637039 018256.0101

38. Among other things, Plaintiffs had to pay late fees to Signet/Zales and spent considerable time and effort to attempt to repair Plaintiffs' relationship with Signet/Zales.

39. Notwithstanding these efforts, Defendants had already caused significant damage to Plaintiffs and their business relationship with Signet/Zales.

40. As a direct result of Defendants' conduct, Plaintiffs' overall sales to Signet/Zales declined dramatically, and Plaintiffs' revenue from Signet/Zales dropped by at least $6,000,000 (six million dollars).

41. Defendants' conduct particularly impacted Plaintiffs' sales of ladies' fine jewelry to Signet's Zales brands.

42. But for Defendants' conduct, Plaintiffs would not have suffered these damages to their business relationship with Signet/Zales.

43. Upon information and belief, Defendants have continued to do business with Signet/Zales since 2017, and have been unjustly enriched.

44. Upon information and belief, Defendants have similarly sought to interfere wrongfully and maliciously with other business relationships of Plaintiffs'.

45. Upon information and belief, as a result of that other wrongful and malicious interference with Plaintiffs' business relationships, Defendants have caused Plaintiffs to suffer additional damages.

## COUNT I
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
(New York law)

46. The JDM Entities repeat and re-allege the allegations set forth in paragraphs 1 through 45 as if more fully set forth herein.

47. The JDM Entities had existing and prospective business relationships with their customer Signet Jewelers, including with Zales.

48. Defendants were aware these relationships existed before the Joint Venture was formed, while the Joint Venture was ongoing, and after the Joint Venture ended.

49. Defendants intentionally interfered with and undermined the JDM Entities' existing and prospective business relationships with Signet Jewelers, and particularly with Zales.

50. Defendants used wrongful, dishonest and/or improper means, and acted with malicious intent, in interfering with and undermining the JDM Entities' business relationships, including with Signet Jewelers (the owner of Zales).

51. Defendants communicated with Signet/Zales in a false, fraudulent, dishonest and/or improper manner, and improperly, unfairly and/or dishonestly used Defendants' knowledge and control of Plaintiffs' orders and production and shipping processes, all with malicious intent solely to harm the JDM Entities, to damage the JDM Entities' relationship with Signet/Zales.

52. Defendants' intentional interference by wrongful means and with malicious intent caused substantial injury to Plaintiffs' business relationship with Signet Jewelers, and particularly with Zales.

53. As a direct and proximate result of the above-described conduct by Defendants, Plaintiffs have suffered monetary damages in an amount to be determined at trial but believed to exceed $6,000,000 (six million dollars), plus interest.

54. The actions of Defendants were in bad faith, willful and wanton, and warrant the imposition of punitive damages.

## COUNT II
## UNFAIR COMPETITION
(New York law)

55. The JDM Entities repeat and re-allege the allegations set forth at paragraphs 1 through 54 as if more fully set forth herein.

56. Plaintiffs' skills, expenditures, and labor includes successful business development and jewelry design techniques.

57. Defendants had access to critical aspects of Plaintiffs' business, including but not limited to full customer style histories, production methods, order statuses, and cost breakdowns of all items sold, as well as had control over Plaintiffs' production and shipping processes.

58. Defendants unfairly and wrongfully utilized non-public information about Plaintiffs' customer orders, including but not limited to the knowledge, specifications, and other information required to fulfill Plaintiffs' orders for Signet/Zales.

59. Defendants used this information to unlawfully compete with Plaintiffs for Signet/Zales' business.

60. Defendants exploited the skills, expenditures, and labors of Plaintiffs.

61. These skills, expenditures, and labors belonged exclusively to Plaintiffs.

62. As a direct and proximate result of the above-described conduct by Defendants, Plaintiffs have suffered monetary damages in an amount to be determined at trial but believed to exceed $6,000,000 (six million dollars), plus interest.

63. The actions of Defendants were in bad faith, willful and wanton, and warrant the imposition of punitive damages.

## COUNT III
## UNJUST ENRICHMENT
(New York law)

64. The JDM Entities repeat and re-allege the allegations set forth in paragraphs 1 through 63 as if more fully set forth herein.

65. Defendants benefitted from their knowledge and control of Plaintiffs' orders, customer and product information, and production and shipping processes.

66. Defendants unjustly benefitted at the Plaintiffs' expense.

67. It is against equity and good conscience to permit Defendants to retain knowledge of Plaintiffs' orders and related customer and business information, and to retain the business they have unjustly diverted from Plaintiffs (including from Signet/Zales), without compensating the Plaintiffs for same.

68. As a direct and proximate result of the above-described conduct by Defendants, Plaintiffs have suffered monetary damages in an amount to be determined at trial, but believed to exceed $6,000,000 (six million dollars), plus interest.

**WHEREFORE**, Plaintiffs demand judgment as follows:

A. In favor of the JDM Entities and against the Defendants, on Counts One, Two, and Three, in amounts to be determined at trial, but believed to be in excess of $6,000,000 (six million dollars), plus interest;

B. An award of attorney's fees and costs;

C. An award of punitive damages;

D. Together with applicable interest and for such other and further relief as is just and proper.

4637039 018256.0101

Dated: New York, New York
　　　　February 19, 2021

                    MOSES & SINGER LLP
                    Attorneys for Plaintiffs

                    By: /s/ *Gregory Fleesler* _____
                          Gregory Fleesler
                          Michael Rosenberg
                    The Chrysler Building
                    405 Lexington Avenue
                    New York, New York 10174
                    Tel: (212) 554-7800