UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JDM IMPORT CO. INC., MG WORLDWIDE LLC, and
ASIA PACIFIC JEWELRY, L.L.C.,

                              Plaintiffs,

v.                                                    Case No. 1:20-cv- 08759-VEC

SHREE RAMKRISHNA EXPORTS PVT., LTD.,
AMIT SHAH, and THE JEWELRY CO.,

                              Defendants.

---

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

**HODGSON RUSS LLP**
*Attorneys for Defendants*
*Shree Ramkrishna Exports Pvt., Ltd.,*
*Amit Shah, and The Jewelry Co.*
Joseph P. Goldberg,
Carmine J. Castellano, and
Joshua Feinstein, of Counsel
605 Third Avenue, Suite 2300
New York, New York 10158
Telephone:  (212) 751-4300

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

PRELIMINARY STATEMENT ....................................................................1

FACTS .......................................................................................................3

    A.    The Parties ........................................................................3

    B.    The Defendants' Alleged Agent ......................................4

    C.    The Alleged Joint Venture ...............................................4

    D.    The Alleged Wrongful Conduct........................................5

    E.    Related Litigation............................................................7

POINT I.    PERSONAL JURISDICTION IS LACKING WITH
    RESPECT TO ALL DEFENDANTS ..........................................8

    A.    The Plaintiffs' Group Pleading is Insufficient to Establish
    Jurisdiction........................................................................8

    B.    No Jurisdiction Over Defendant Shah ..............................9

    C.    No Jurisdiction Based on the Purported New York Agent.........9

    D.    Jurisdiction is Lacking Under New York's Long Arm Statute.................10

        1.    The plaintiffs' claims do not arise from tortious acts
        within the state ...............................................10

        2.    The plaintiffs' claims do not arise from tortious acts
        without the state causing injury within the state ...........................11

        3.    The plaintiffs' claims do not arise from business
        transacted within the state or contracts to supply
        goods or services within the state ...................................11

    E.    Exercising Jurisdiction Would Offend Due Process.................................13

POINT II.    THE COMPLAINT FAILS TO STATE A CLAIM.................................14

    A.    The Standard on a Rule 12(b)(6) Motion.................................14

    B.    Plaintiffs' Equitable and Tort Claims Fail Because They
    Sound in Contract ...........................................................14

i

## <u>TABLE OF CONTENTS - cont'd</u>

<u>PAGE</u>

C.    The Tortious Interference Claim Is Insufficiently Pled ............................16

    1.    The defendants did not employ wrongful means ..........................16

    2.    Plaintiffs fail to allege a causal connection to their
        purported damages ........................................................................19

D.    The Unfair Competition Claim is Insufficiently Pled ..............................20

    1.    A breach of contract does not constitute unfair competition .........21

    2.    The plaintiffs do not allege that defendants' alleged
        future business is the fruit of misappropriation ...........................21

E.    The Unjust Enrichment Claim is Insufficiently Pled ................................23

CONCLUSION.......................................................................................................24

# TABLE OF AUTHORITIES

PAGE

**Federal Cases**

*Am. Fin. Int'l Grp.-Asia, L.L.C. v. Bennett*,
    No. 05 Civ. 8988, 2007 WL 1732427 (S.D.N.Y. June 14, 2007)............................................24

*Apotex Corp. v. Hospira Healthcare India Private Limited*,
    18-CV-4903 (JMF) 2019 WL 3066328 (S.D.N.Y. July 12, 2019)....................................17, 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................14

*Bancorp Services, LLC v. American General Life Insurance Company*,
    14-CV-9687 2016 WL 4916969 (S.D.N.Y. Feb. 11, 2016)............................................15, 21

*Bazak Intern Corp. v. Tarrant Apparel Group*,
    347 F. Supp. 2d 1 (S.D.N.Y. 2004)..............................................................................15, 23

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................................14

*Berman v. Sugo LLC*,
    580 F. Supp. 2d 191 (S.D.N.Y. 2008)..........................................................................22, 23

*Bhutan Int'l Festival, Ltd. v. Eden Project*,
    No. 17-CV-8980, 2018 WL 6329402 (S.D.N.Y. Dec. 3, 2018) (Caproni, J.) ...............8, 9, 11

*In re Bristol-Myers Squibb Secs. Litig.*,
    312 F. Supp. 2d 549 (S.D.N.Y. 2004)..................................................................................18

*Brown v. Ghost Town in the Sky*,
    No. 01-CV-0189, 2001 WL 1078341 (E.D.N.Y. Aug. 23, 2001)...........................................12

*Bucephalus Alternative Energy Group, LLC v. KCR Development*,
    No. 08 Civ. 7343, 2009 WL 5179091 (S.D.N.Y. Dec. 23, 2009)............................................9

*Carson Optical Inc. v. eBay Inc.*,
    202 F.Supp. 3d 247 (E.D.N.Y. 2016) ..................................................................................20

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*,
    547 F.3d 115 (2d Cir. 2008)................................................................................................16

*Charles Schwab Corp. v. Bank of Am. Corp.*,
    883 F.3d 68 (2d Cir. 2018)..................................................................................................13

## TABLE OF AUTHORITIES - cont'd

PAGE

*Croton Watch Co., Inc. v. National Jeweler Magazine, Inc.*,
    No. 06 CV 662, 2006 WL 2254818 (S.D.N.Y. Aug. 7, 2006) ...............................................18

*Czech Beer Importers, Inc. v. C. Haven Imports, LLC*,
    No. 04 Civ. 2270, 2005 WL 1490097 (S.D.N.Y. June 23, 2005)............................................23

*Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*,
    568 F. Supp. 2d 329 (S.D.N.Y. 2008)......................................................................................11

*Dooner v. Keefe, Bruyete & Woods, Inc.*,
    157 F. Supp. 2d 265 (S.D.N.Y. 2001).......................................................................................18

*Dow Jones v. International Security Exchange, Inc.*,
    451 F.3d 295 (2d Cir. 2006).......................................................................................................22

*Eyeking, LLC v. JSS, LLC*,
    321 F. Supp. 3d 326 (E.D.N.Y. 2018) ......................................................................................12

*Friedman v. Coldwater Creek, Inc.*,
    551 F. Supp. 2d 164 (S.D.N.Y. 2008).......................................................................................18

*Fung Schwartz v. Center Corporation*,
    17-CV-233, 2019 WL 4393022 (S.D.N.Y. 2019).....................................................................22

*G.L.M. Sec. & Sound, Inc. v. LoJack Corp.*,
    No. 10 Civ. 4701, 2011 WL 4594825 (E.D.N.Y. Sept. 30, 2011)...........................................19

*Global Beauty Group, LLC v. Visual Beauty, LLC*,
    16 Civ. 9214 (KPF), 2018 WL 840102 (S.D.N.Y. Feb. 12, 2018)....................................16, 17

*Hollander v. Flash Dancers Topless Club*,
    173 F.App'x 15 (2d Cir. 2006) .................................................................................................20

*Homeschool Buyers Club Inc. v. Brave Writer*, *LLC*,
    CV-6046, 2020 WL 1166053 (S.D.N.Y. 2020).......................................................................12

*Hui Quin Zhao v. Yu Qui Wang*,
    558 Fed.Appx. 41 (2d Cir. 2014)..............................................................................................21

*Jonas v. Estate of Leven*,
    116 F. Supp. 3d 314 (S.D.N.Y. 2015).........................................................................................8

*Lou v. Trutex, Inc.*,
    872 F. Supp. 2d 344 (S.D.N.Y. 2012).........................................................................................3

iv

## **TABLE OF AUTHORITIES - cont'd**

PAGE

*McKinnon v. Hermes of Paris, Inc.*,
No. 06 CIV. 1001, 2007 WL 1098707 (S.D.N.Y. Apr. 10, 2007).........................................14

*Mina Inv. Holdings, Ltd. v. Lefkowitz*,
51 F. Supp.2d 486 (S.D.N.Y. 1999)......................................................................................24

*Neewra, Inc. v. Manakh Al Khaleej General Trading and Contracting Co.*,
No. 03 Civ. 2936, 2004 WL 1620874 (S.D.N.Y. Jul. 20, 2004) ............................................12

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt., Inc.*,
712 F.3d 705 (2d Cir. 2013).................................................................................................14

*RFP LLC v. SCVNGR, Inc.*,
788 F. Supp. 2d 191 (S.D.N.Y. 2008)....................................................................................17

*Ritani, LLC v. Aghjayan*,
880 F.Supp. 2d 425 (S.D.N.Y. 2012).....................................................................................19

*Ritani, LLC v. Aghjayan*,
970 F. Supp. 2d 232 (S.D.N.Y. 2013)....................................................................................23

*Sandrino v. Michaelson Associates, LLC*,
No. 10 Civ. 7897, 2012 WL 5851135 (S.D.N.Y. November 19, 2012) ..................................21

*Semple v. Eyeblaster, Inc.*,
No. 08 Civ. 9004, 2009 WL 2709281 (S.D.N.Y. Aug. 27, 2009) .........................................19

*In re SSA Bonds Antitrust Litig.*,
420 F. Supp. 3d 219 (S.D.N.Y. 2019)......................................................................................8

*Tera Grp., Inc. v. Citigroup, Inc.*,
No. 17-CV-4302, 2018 WL 4732426 (S.D.N.Y. Sept. 28, 2018)...........................................8

*TIA LTD v. AT&T Corp.*,
280 F.3d 175 ........................................................................................................................22

*Trisvan v. Heyman*,
305 F. Supp. 3d 381 (E.D.N.Y. 2018) .....................................................................................3

*V Cars, LLC v. Israel Corp*,
902 F. Supp. 2d 349 (S.D.N.Y. 2012)....................................................................................13

*Valley Lane Industries Co. v. Victoria's Secret Direct Brand Management*,
455 Fed. Appx. 102 (2d Cir. 2012).......................................................................................16

## TABLE OF AUTHORITIES - cont'd

PAGE

*Washington v. Kellwood Co.*,
 No. 05 Civ. 10034, 2009 WL 855652 (S.D.N.Y. Mar. 24, 2009) ...........................................24

*Zino Davidoff SA v. Selective Distribution Intern. Inc.*,
 No. 07 Civ. 10326, 2013 WL 1245974 (S.D.N.Y. Mar. 8, 2013) ..........................................21

**State Cases**

*America/International 1994 Venture v. Mau,*
 146 A.D.3d 40 (2d Dep't 2016) ....................................................................................9, 10

*Bazak Intern Corp. v. Mast Industries Inc.,*
 73 N.Y.2d 113 (1989) ...........................................................................................................14

*Bluewaters Communications Holding, LLC v. Eccelstone,*
 122 A.D.3d 426 (1st Dep't 2014) ........................................................................................10

*Carvel Corp. v. Noonan,*
 3 N.Y.3d 182 (2004) .............................................................................................16, 17, 19, 20

*Clark Fitzpatrick Inc. v. Long Island R. Co.,*
 70 N.Y.2d 382 (1987) ...........................................................................................................15

*Coast to Coast Energy, Inc. v. Gasarch,*
 149 A.D.3d 485 (1st Dep't 2017) ......................................................................................9, 10

*Cooper v. Hodge,*
 28 A.D.3d 1149 (4th Dep't 2006) ........................................................................................18

*CRT Investments, Ltd. v. BDO Seidman, LLP*
 85 A.D.3d 470 (1st Dep't 2011) ..........................................................................................11

*Deutsche Bank AG v. Vik,*
 163 A.D.3d 414 (1st Dep't 2018) ....................................................................................11, 13

*ITC Ltd. v. Punchgini, Inc.,*
 9 N.Y.3d 467 (2007) .............................................................................................................20

*LopPresti v. Massachusetts Mut. Life Ins. Co.,*
 30 A.D.3d 474 (2d Dep't 2006) ...........................................................................................20

*Strorch v. Vigneau,*
 162 A.D.2d 241 (1st Dep't 1990) ........................................................................................12

### TABLE OF AUTHORITIES - cont'd

PAGE

*Trimarco v. Edwards*,
    183 A.D.3d 402 (1st Dep't 2020) .................................................................12

*V. Ponte and Sons, Inc. v. American Fibers*,
    222 A.D.2d 271 .........................................................................................21

**Rules**

CPLR § 302(a) ...................................................................................................10

CPLR § 302(a)(1) ........................................................................................11, 12

CPLR § 302(a)(2) ...............................................................................................10

CPLR § 302(a)(3) ...............................................................................................11

Federal Rule of Civil Procedure 12(b)(2) ............................................................3

Federal Rule of Civil Procedure 12(b)(6) ..........................................................14

## PRELIMINARY STATEMENT

This is now the fourth lawsuit pending among the parties or related companies and individuals arising from their dealings in the diamond jewelry industry. Not satisfied with active cases already pending in both New York State Supreme Court and Singapore, the plaintiffs seek out yet a third jurisdiction with little apparent purpose other than to oppress the defendants through further litigation. Acknowledging the tenuous underpinnings of their claims, the plaintiffs have also already once elected to amend their original complaint in this action. But the Amended Complaint (Doc. No. 21) (the "Complaint") only brings into starker relief the fundamental deficiencies affecting their claims. These include:

- An impermissible group pleading, which fails to distinguish the alleged actions of virtually any of the defendants;

- No particularized allegations whatsoever with respect to the newly added defendant, Shree Ramkrishna Exports Pvt., Ltd. ("SRK");

- No allegations supporting jurisdiction over individual defendant Amit Shah, who allegedly sent an email from India to non-New York based employees of a Bermudan company with headquarters in Ohio;

- No allegations showing how the defendants' purported New York agent — which purportedly justifies jurisdiction over the corporate defendants — was in fact their agent, let alone that it had any involvement whatsoever in the alleged conduct;

- The acknowledgement that Shah's email  — which was the basis for the plaintiffs' sole prior claim for unjust enrichment — ultimately proved to be accurate, notwithstanding that it simply included statements of belief or opinion about the future that were never actionable in the first place;

- The plaintiffs' newly added claims for unfair competition and unjust enrichment sounding in contract and thus unsustainable because they are premised on the "hold up" of orders that the plaintiffs placed with the defendants for merchandise;

- The plaintiffs' deliberate avoidance of a contract claim because admitting that the orders at issue were contracts would undermine their position in the prior New York and Singapore actions where they are seeking to avoid payment on over $26 million of similar orders that were duly fulfilled by the defendants;

- The further failure of the plaintiffs' unfair competition and unjust enrichment claims because they do not allege wrongful means or a protectable interest in any purportedly misappropriated information, let alone a causal connection with the plaintiffs' supposed damages, or even that the defendants in fact obtained business from the their purported customers.

So, for these and other reasons, the Court should dismiss the Complaint with prejudice.

2

## FACTS

For purposes of this motion to dismiss, the non-conclusory allegations in the Complaint are assumed to be true. The defendants do not admit their veracity for any other purpose. In addition, the Court may consider documents referenced in the Complaint and take judicial notice of publicly available documents, such as filings in related matters. *Lou v. Trutex, Inc.*, 872 F. Supp. 2d 344, 349 n.6 (S.D.N.Y. 2012). It may likewise consider evidence from outside the pleadings that is introduced in support of defendants' Rule 12(b)(2) motion to dismiss. *See, e.g., Trisvan v. Heyman,* 305 F. Supp. 3d 381, 391 (E.D.N.Y. 2018).

### A.    The Parties

Plaintiffs are domestic entities with a principal place of business in New York. Compl. ¶¶ 4-6. Defendants Shree Ramkrishna Exports PVT., LTD ("SRK") and The Jewelry Co. are entities organized under Indian law and based in that country. Compl. ¶¶ 8-9. Neither entity has ever maintained an office in New York. Dholakia Decl. ¶ 2; Shah Decl. ¶ 2. Neither SRK nor The Jewelry Co. have any employees in New York and they are not registered to do business in New York. *Id.* They also do not own any property in New York. *Id.* SRK's sales to New York customers comprise only approximately only 14% of its annual business. Dholakia Aff. ¶ 2. The Jewelry Co.'s sales to New York customers comprise approximately 3% of its annual business. Shah Aff. ¶ 2.

Defendant Amit Shah is the Chief Executive Officer of The Jewelry Co. and resides in India. Compl. ¶ 7. "From mid–2015 through mid–2017," Shah allegedly "spent approximately one out of every six weeks working at the JDM Entities' office in New York."

Compl. ¶ 22.  It is not alleged, however, that Shah committed any wrongful acts in New York or

that his trips were related to the claims at issue.  Compl. ¶ 25.

**B.     The Defendants' Alleged Agent**

The Complaint asserts in a conclusory fashion that SRK and The Jewelry Co.

"controlled and directed TJC Jewelry Inc….their agent in New York…."  Compl. ¶ 10.  SRK and

The Jewelry Co., however, deny any ownership interest in TJC Jewelry Inc. ("TJC") and no

representative of either entity has served as an officer, director, or employee of TJC.  Dholakia

Decl. ¶ 3; Shah Decl. ¶ 4.  TJC is also not an agent of either these defendants, and never had

authority to act generally on either of their behalf.  *Id.*

Defendants "regularly sent manufactured goods to TJC NY at Plaintiff JDM's

New York office for re-packaging and delivery to customers in the United States."  Compl. ¶ 21.

It is not alleged, however, that these goods are related to the claims here.

**C.     The Alleged Joint Venture**

In November 2014, the plaintiffs' principals, brothers Michael and David Kriss

travelled to India in search of business opportunities.  Goldberg Decl., Ex. A, at 3 (Dkt. No. 20-

3).  According to the Kriss brothers, they met with Rahul Dholakia, Managing Director of SRK,

who allegedly proposed forming a joint venture.  Goldberg Decl., Ex. A at 4.  In April 2015, the

plaintiffs began operating the alleged joint venture with SRK and other related entities, including

The Jewelry Co.  Compl. ¶ 18; Goldberg Decl., Ex. A at 8, 10-11.

From 2015 through 2017, defendants manufactured goods to plaintiffs'

specifications.  Compl. ¶ 19.  For this purpose, defendants "possessed the models,

4

designs/CADs, tooling, and other information required to make the types of jewelry requested by plaintiffs' clients." Compl. ¶ 20.  Although tens of millions in annual revenue were purportedly involved, the plaintiffs do not allege a written agreement evidencing the joint venture.  Goldberg Decl., Ex. A at 5.  The "corporate embodiment" of the alleged joint venture was J.G. Jewelry PTE. LTD ("JGJ"), a Singapore entity with "management and control" in India.  Goldberg Decl., Ex. A at 7.

In or about August 2017, SRK and related entities, including The Jewelry Co., "unilaterally purported to terminate" the alleged joint venture.  Compl. ¶ 21.

**D.    The Alleged Wrongful Conduct**

Between August 2017 and October 2017, plaintiffs "placed and continued to place orders" with defendants and provided defendants "the knowledge, specifications, and other information required to manufacture the orders." Compl. ¶¶ 25, 27.  Defendants accepted the orders and allegedly "controlled the manufacturing and distribution to Plaintiffs of the orders…." Compl. ¶¶ 26, 28.  "By early October, it became apparent to Plaintiffs that Defendants would not fulfil Plaintiffs' orders."  Compl. ¶ 34. "Using this information and control," defendants "began a deliberate and concerted effort to wrongfully interfere with [plaintiffs'] existing and prospective business relationships, including those with Signet and Zales."  Compl. ¶ 29.

The only alleged example of this interference provided in the Complaint, however, is an email that Shah wrote to several employees of an alleged customer of the plaintiffs, Signet Jewelers ("Signet"), which owns the jewelry brands, Zales.  This stated:

> I am sure you are aware that the partnership between MGW
> and SRK (us) has been dissolved and unfortunately it has not

5

> ended well.  I understand that a lot of your PO's and orders
> are held up in production which I don't think MGW will be
> able to deliver this season.  I have a proposal for you to help
> you in this situation….

Compl. ¶ 30.  Defendants allegedly "were responsible for Defendant Shah's claimed 'h[o]ld up in production' of Signet/Zales' order, and sought to divert Signet/Zales' business from Plaintiffs to themselves."  Compl. ¶ 31.

On the day he allegedly sent the email, Shah was in India and the recipients were not based in New York.  Shah Decl. ¶ 3.  Signet is a publicly traded company that is domiciled in Bermuda and headquartered in Akron, Ohio.  Goldberg Decl. ¶ 6 and Ex. F. (Doc. Nos. 20-2 and 20-8).  Zales is a brand belonging to Signet.  Goldberg Decl. Ex. F. at 9.

"Although Plaintiffs located another manufacturer, Defendants' conduct damaged Plaintiffs' relationship with Signet/Zales, including by delaying Plaintiffs' production and delivery of Signet/Azales' orders."  Compl. ¶ 37.  Plaintiffs also allegedly had to pay late fees to Signet and their subsequent revenue attributable to Signet has decreased by $6 million.  Compl. ¶¶ 38, 40.  "Upon information and belief," defendants allegedly "have continued to do business with Signet/Zales…and have been unjustly enriched."  Compl. ¶ 43.

The plaintiffs have not asserted any breach of contract, even though the defendants' allegedly "held up" their orders so that the plaintiffs "were forced to scramble to locate a new manufacturer just prior to the holiday season."  Compl. ¶¶ 31, 36.  Nor does the Complaint identify any prospective contract with either Signet or Zales or allege that there have been any specific instances where Signet or Zales have refused to do business with any of the plaintiffs.

6

**E.      Related Litigation**

This action is the latest of four proceedings now pending between the parties or related entities or individuals before three separate courts.  On March 27, 2018, the plaintiffs, together with JGJ and one other related entity, commenced an action against The Jewelry Co., SRK, and one other defendant in Supreme Court, New York County under Index No. 651469/2018 (the "State Court Action").  Among other claims, the plaintiffs asserted breach of contract, fraud, and unjust enrichment based on the defendants' purported failure to honor their obligations under the alleged joint venture.  Goldberg Decl., Ex. A at 26-32. (Doc. No. 20-3).

On April 23, 2018, SRK commenced an action in Singapore against JGJ due to its failure to pay for $23,400,456.25 of diamonds and jewelry sold to JGJ for shipment and delivery to the plaintiffs or their customers.  Goldberg Decl., Ex D at 2.  (Doc. No. 20-6).  In a second Singapore lawsuit, a director of JGJ brought a minority oppression lawsuit against JGJ and the plaintiffs' principals, the Kriss brothers, alleging, among other things, accounting irregularities and self-dealing, including the wrongful diversion of $15,488,893.00.  Goldberg Decl., Ex. E at 12.

The plaintiffs in this action and their affiliates have received but not paid for over $26 million in merchandise that was supplied by SRK or The Jewelry Co.  Goldberg Decl., Exs. B and C.  (Doc. Nos. 20-4 and 20-5).  JGJ's failure to pay SRK and The Jewelry Co. for the same $26 million in merchandise also forms a basis for some of the counterclaims that have been asserted in the State Court Action against plaintiffs and JGJ.  *Id.*

## POINT I.  PERSONAL JURISDICTION IS LACKING
## WITH RESPECT TO ALL DEFENDANTS

In diversity cases, a district court looks to the law of the state in which it sits to determine personal jurisdiction.  *Bhutan Int'l Festival, Ltd. v. Eden Project*, No. 17-CV-8980, 2018 WL 6329402, at *5 (S.D.N.Y. Dec. 3, 2018) (Caproni, J.); *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015).  The burden of establishing jurisdiction lies with the plaintiff.  *Bhutan Int'l Festival, Ltd.* at *5.

### A.      The Plaintiffs' Group Pleading is Insufficient to Establish Jurisdiction

An indiscriminate "group pleading" or "lumping" of multiple defendants with no meaningful attempt to particularize their individual conduct is insufficient to establish personal jurisdiction over any defendant.  *See Tera Grp., Inc. v. Citigroup, Inc.*, No. 17-CV-4302, 2018 WL 4732426, at *2 (S.D.N.Y. Sept. 28, 2018) (no jurisdiction where allegations conflated related but distinct corporate defendants); *FrontPoint Asian Event Driven Fund*, 16 Civ. 5263, 2017 WL 3600425, at *6 (S.D.N.Y. Aug. 18, 2017) (For purposes of alleging personal jurisdiction, "plaintiffs may not refer to affiliated defendants by a conclusory collective name unless plaintiffs adequately allege that the conduct of one affiliate is attributable to another."); *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 233 (S.D.N.Y. 2019).

Here, the plaintiffs consistently refer collectively to the defendants without distinguishing their individual actions or explaining why their conduct is attributable to each other.  Accordingly, their "complaint fails to make even the most basic showing that this Court has personal jurisdiction" over any defendant and dismissal is necessary.  *Tera Grp., Inc.* at *2.

**B.      No Jurisdiction Over Defendant Shah**

The plaintiffs' flimsy jurisdictional basis — and the oppressive nature of this lawsuit generally — is particularly glaring with respect to defendant Shah.  A resident of India, Shah was in that country when he engaged in the one alleged act specifically attributable to him, the sending of an email.  Shah Decl. ¶ 3.  The email was further directed at non-New York based employees of a Bermudan company with headquarters in Ohio — not New York.  Goldberg ¶ 6 and Ex. F; Shah Decl. ¶ 3.  And Shah had no contractual relationship with any of the plaintiffs.  So personal jurisdiction over him does not exist.  *Bhutan Int'l Festival*, 2018 WL 6329402, at *6 (Caproni, J.) (emphasizing importance of on-going contractual relationship in evaluating personal jurisdiction); *Bucephalus Alternative Energy Group*, *LLC v. KCR Development*, No. 08 Civ. 7343, 2009 WL 5179091, at *5 (S.D.N.Y. Dec. 23, 2009) (no jurisdiction over business owner where any relevant conduct had no relation to New York).

**C.      No Jurisdiction Based on the Purported New York Agent**

The plaintiffs' attempt to establish jurisdiction through the defendants' purported New York agent, TJC Jewelry, Inc. ("TJC") is similarly misplaced.  Compl.  ¶ 10.  To obtain jurisdiction through an agent, "a plaintiff's allegations must sufficiently detail the defendant's conduct" so as to persuade the court that the defendant exercised control over the alleged agent and that the agent was acting on the defendant's behalf.  *Coast to Coast Energy, Inc. v. Gasarch*, 149 A.D.3d 485, 486-487 (1st Dep't 2017) (granting motion to dismiss for lack of personal jurisdiction where allegations did not sufficiently detail agency relationship); *see also America/International 1994 Venture v. Mau*, 146 A.D.3d 40, 54-55 (2d Dep't 2016).

Here, other than in conclusory fashion, the plaintiffs do not allege facts supporting an agency relationship, let alone any instructions or directives that defendants may have given TJC.  Compl.  ¶¶ 10, 21.  *See Coast to Coast*, 149 A.D.3d  at 488.  Further, even if an agency relationship were properly pled, the plaintiffs do not allege any specific conduct by TJC that relates to the claims asserted.  *America/International 1994*, 146 A.D.3d at 58 (no jurisdiction even assuming agency because the agent's conduct was not relevant to the claims at issue).  And the defendants deny any agency relationship with TJC.  Dholakia Aff. ¶ 3; Shah Aff. ¶ 4.  So, the plaintiffs cannot establish jurisdiction through TJC.

**D.    Jurisdiction is Lacking Under New York's Long Arm Statute**

Under New York's long-arm statute, CPLR § 302(a), jurisdiction may be asserted over a non-domiciliary, who "1. transacts any business within the state or contracts anywhere to supply goods or services in the state; 2. commits a tortious act within the state…; or 3. commits a tortious act without the state causing injury to person or property within the state…."  None of these provisions provide a basis for jurisdiction here.

**1.    The plaintiffs' claims do not arise from tortious acts within the state**

CPLR § 302(a)(2) does not provide a basis for jurisdiction, as the plaintiffs do not allege that the defendants committed any tortious acts within New York.  *Bluewaters Communications Holding, LLC v. Eccelstone*, 122 A.D.3d 426, 427-428 (1st Dep't 2014).  Rather, any alleged tortious actions — which here center on the sending of an email — occurred in India and were directed at a company organized in Bermuda with headquarters in Ohio.  Compl. ¶¶ 30-31; Shah Decl. ¶ 3; Goldberg Decl.¶ 6.

10

2.    **The plaintiffs' claims do not arise from tortious acts without the state causing injury within the state**

CPLR § 302(a)(3) is also not satisfied.  In the commercial tort context, where the damage is solely economic, the situs of injury is where the original critical events associated with the action or dispute took place, not where any financial loss or damages occurred.  *CRT Investments, Ltd. v. BDO Seidman*, *LLP* 85 A.D.3d 470, 471-472 (1st Dep't 2011); *Deutsche Bank AG v. Vik*, 163 A.D.3d 414, 415 (1st Dep't 2018); *see also Bhutan Int'l Festival, Ltd*., 2018 WL 6329402, at *7 n. 11 (Caproni, J.) (the residence or domicile of the plaintiff in the forum is not sufficient for jurisdiction under CPLR § 302(a)(3)).

Here, the critical events occurred in India, where Shah allegedly drafted the email, or in Ohio or Bermuda, where the customer at whom the email was directed is based.  That those alleged actions may have purportedly caused economic harm to the plaintiffs located in New York is irrelevant.  *See Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.,* 568 F. Supp. 2d 329, 336, 337 (S.D.N.Y. 2008) (no personal jurisdiction over tortious interference claim where  alleged loss of goodwill and business was with respect to clients located overseas and not in New York) ("While Plaintiff is correct to note that lost sales or customers can satisfy the injury within New York requirement under Section 302(a)(3)(ii), those lost sales must be in the New York market, and those lost customers must be New York customers.").

3.    **The plaintiffs' claims do not arise from business transacted within the state or contracts to supply goods or services within the state**

CPLR § 302(a)(1) likewise is not satisfied.  Initially, the tortious interference claim does not arise from the transaction of business in New York or goods or services supplied within the State.  To meet this standard, "the cause of action must be directly related to, and arise

11

from the business…transacted" in the state.  *Strorch v. Vigneau*, 162 A.D.2d 241, 242 (1st Dep't 1990); *Trimarco v. Edwards*, 183 A.D.3d 402, 402-403 (1st Dep't 2020).  In other words, a plaintiff must show both that the defendant transacted business in New York and that the claim is "directly related to" and "arises from" that business.  *See Eyeking, LLC v. JSS, LLC,* 321 F. Supp. 3d 326, 331 (E.D.N.Y. 2018); *Brown v. Ghost Town in the Sky*, No. 01-CV-0189, 2001 WL 1078341, at *3 (E.D.N.Y. Aug. 23, 2001).

Here, neither of those elements are met.  To the contrary, the plaintiffs' claim arises from an email that was sent from India and was directed at non-New York based employees of a company organized in Bermuda with headquarters in Ohio.  Shah Decl. ¶ 3; Goldberg Decl.¶ 5 and Ex. F.  The Complaint is devoid of allegations showing how the plaintiffs' claim is "directly related to" and "arise[] from" business transacted in New York.  *See Strorch*, 162 A.D.2d 241; *Neewra, Inc. v. Manakh Al Khaleej General Trading and Contracting Co.*, No. 03 Civ. 2936, 2004 WL 1620874, at *4 (S.D.N.Y. Jul. 20, 2004) (holding that only contacts associated with transaction at issue were relevant to jurisdiction under CPLR § 302(a)(1), and forum contacts associated with prior, related transaction were not relevant).

Further, the plaintiffs' claims for unfair competition and unjust enrichment are based on their conclusory allegations that defendants misappropriated confidential information after the alleged joint venture between the parties had ended.  Compl. ¶ 23-68.  But jurisdiction does not exist over these claims because the Complaint contains no allegations showing how the alleged misappropriation is sufficiently connected to business transacted in New York.  *Homeschool Buyers Club Inc. v. Brave Writer*, *LLC*, CV-6046, 2020 WL 1166053, at *5 (S.D.N.Y. 2020) (explaining "although Plaintiff has put forth facts suggesting that Defendant has

12

conducted limited business in New York prior to Defendant's termination of the parties'

contract…. Plaintiff's instant claims are forward-looking in nature and require Defendant's

misuse of Plaintiff's customer information after the alleged improper termination of the contract,

and in breach of Plaintiff's alleged rights…Plaintiff has not sufficiently averred facts suggesting

that Defendant has actually continued to transact business in New York in a manner giving rise

to such claims"); *V Cars, LLC v. Israel Corp*, 902 F. Supp. 2d 349, 364 n.13 (S.D.N.Y. 2012)

("A misappropriation claim cannot be said to arise from transactions of business in New York

where a New York meeting was merely "a link in the chain of events leading to the claim for

which relief is sought.") (collecting cases).

**E.      Exercising Jurisdiction Would Offend Due Process**

      Where, as here, the conduct that forms the basis for the plaintiffs' claims takes

place out of forum, and the only relevant jurisdictional contacts with the forum are the harmful

effects suffered by the plaintiffs, a court must inquire whether the defendant "expressly aimed"

its conduct at the forum to determine whether an exercise of jurisdiction would comport with due

process. *Deutsche Bank*, 163 A.D.3d at 415-416; (citing *Charles Schwab Corp. v. Bank of Am.

Corp.*, 883 F.3d 68, 87 (2d Cir. 2018)).

      Here, defendants allegedly directed their purported conduct at Signet, a Bermuda

corporation operating from Ohio.  So even though defendants' conduct may have allegedly

caused injury in New York, the exercise of jurisdiction over the defendants would be

inconsistent with due process.  *Id.*

## POINT II.
## THE COMPLAINT FAILS TO STATE A CLAIM

### A.      The Standard on a Rule 12(b)(6) Motion

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  The complaint "must demonstrate 'more than a sheer possibility that a defendant has acted unlawfully.'"  *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 718 (2d Cir. 2013).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'"  *Iqbal,* 556 U.S. at 678.  "While a plaintiff need not include evidentiary detail, she must allege a factual predicate that is concrete enough to warrant further proceedings."  *McKinnon v. Hermes of Paris, Inc*., No. 06 CIV. 1001, 2007 WL 1098707, at *2 (S.D.N.Y. Apr. 10, 2007).

### B.      Plaintiffs' Equitable and Tort Claims Fail Because They Sound in Contract

The plaintiffs' Complaint is premised on the defendants' alleged acceptance and subsequent refusal to fulfill orders for jewelry.  Compl. ¶¶ 24-34.  The plaintiffs thus seek damages arising from having to find a new manufacturer, late fees owed to Signet, and a damaged relationship with Signet — all arising from the defendants' alleged failure to meet these orders, which are purported contractual obligations.  Compl. ¶¶ 34-42.  *See, e.g., Bazak Intern Corp. v. Mast Industries Inc.*, 73 N.Y.2d 113, 116 (1989) (holding that binding contract was created when seller accepted purchase order from buyer).

14

The plaintiffs, however, overlook that, "when a valid agreement governs the subject matter of a dispute, claims arising from that dispute are contractual; attempts to repackage them as sounding in fraud, conversion, and other torts…are generally precluded, unless based on a duty independent of the contract." *Bancorp Services, LLC v. American General Life Insurance Company*, 14-CV-9687 2016 WL 4916969, at *9 (S.D.N.Y. Feb. 11, 2016). Thus, "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark Fitzpatrick Inc. v. Long Island R. Co*., 70 N.Y.2d 382, 389-391 (1987). Further, under the same principles, when there is an enforceable agreement between the parties that governs, a plaintiff may not bring claims sounding in quasi contract, such as claims of unjust enrichment. *Bazak Intern Corp. v. Tarrant Apparel Group*, 347 F. Supp. 2d 1, 4 (S.D.N.Y. 2004).

Upon information and belief, the plaintiffs have studiously avoided characterizing their claims as contract claims because doing so would be tantamount to an admission that they or related parties are liable to the corporate defendants and other parties on similar orders exceeding $26 million in the parallel state court and Singapore actions.   But regardless of how or why the plaintiffs have characterized their claims, because the plaintiffs' alleged entitlement to relief sounds in contract, all of these claims must be dismissed.  Obviously, defendants have no independent legal duty to manufacture diamond jewelry and fulfill orders for the plaintiffs absent some enforceable agreement.  So, both the tort and the unjust enrichment claims fail because such claims cannot stand when there exists a contractual agreement on the same subject matter. *See, e.g., Bancorp Services, LLC*,  2016 WL 491696, at *9; *Clark Fitzpatrick Inc.*, 70 N.Y.2d  at 391; *Bazak Intern Corp.*, 347 F. Supp. 2d at 4.

15

**C.      The Tortious Interference Claim Is Insufficiently Pled**

The plaintiffs have also not alleged the required elements for tortious interference. This represents yet an additional reason why this claim fails.

To raise a claim under New York law for tortious interference with business relations, a plaintiff must allege that: (1) it had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship between the plaintiff and the third party.  *Global Beauty Group, LLC v. Visual Beauty, LLC*, 16 Civ. 9214 (KPF), 2018 WL 840102, at *4 (S.D.N.Y. Feb. 12, 2018).  Although this cause of action is sometimes styled as "tortious interference with a prospective economic advantage," there is no distinction between the two, and the same elements will apply.  *Valley Lane Industries Co. v. Victoria's Secret Direct Brand Management*, 455 Fed. Appx. 102, 105 (2d Cir. 2012) (stating that, "tortious interference with business relations and tortious interference with prospective economic advantage are not distinct causes of action"); *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008).

**1.      The defendants did not employ wrongful means**

To establish wrongful means, a plaintiff must allege either that defendants' conduct was either "for the ***sole*** purpose of inflicting intentional harm on the plaintiffs" or amounted either to "egregious wrong doing," such as a crime or an independent tort, or *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004) (emphasis added).  The plaintiffs have done neither.

16

### a.    The defendants acted in their own economic interests

The Complaint makes clear that the defendants acted, at least in part, in their own economic self-interest, as business competitors.  Compl. ¶ 3, 43.  So, under the plaintiffs' own allegations it is clear that the plaintiffs were not acting "for the *sole* purpose of inflicting intentional harm on the plaintiffs."  *Carvel Corp.* at 190 (emphasis added); *Global Beauty Group*, 2018 WL 840102 at *4*; *see also RFP LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 196 (S.D.N.Y. 2008).

### b.    Breach of contract does not amount to "wrongful means"

Further, a simple breach of contract does not constitute the type wrongful means required to sustain the plaintiffs' claim.  *Carvel Corp.* at 190; *Apotex Corp. v. Hospira Healthcare India Private Limited*, 18-CV-4903, 2019 WL 3066328, at *7 (S.D.N.Y. July 12, 2019).  Indeed, the wrongful means element is not be satisfied, even where it is alleged — which is not case here — that the defendants entered in an agreement with no intent of performing under it.  *Apotex Corp.*, 2019 WL 3066328, at *4.  Thus, defendants' alleged failure here to timely fulfill the plaintiffs' orders does not satisfy the wrongful means element.

### c.    Shah's innocuous email does not constitute wrongful means

Other than the defendants' not fulfilling the plaintiffs' orders, the only alleged wrongful means alleged is Shah's innocuous email to Signet.  Compl. ¶ 30.  This reads.

> I am sure you are aware that the partnership between MGW and SRK (us) has been dissolved and unfortunately it has not ended well.  I understand that a lot of your PO's and orders are held up in production which I don't think MGW will be able to deliver this season.  I have a proposal for you to help you in this situation….

17

To begin with, under the plaintiffs' own allegations, the email turned out to be accurate.  The Complaint alleges that the orders referenced were held up.  Compl. ¶ 31.  And the plaintiffs acknowledge they were not able to timely deliver products to Signet.  Compl. ¶ 38.  Thus, there is nothing false, fraudulent, or dishonest about Shah's email, or otherwise constituting the egregious conduct required to show "wrongful means."  *Cooper v. Hodge*, 28 A.D.3d 1149, 1151 (4th Dep't 2006) (true statements could not make out defamation claim, and the utterance of such statements did not amount to a crime or independent tort to support tortious interference claim); *Croton Watch Co., Inc. v. National Jeweler Magazine, Inc.*, No. 06 CV 662, 2006 WL 2254818 (S.D.N.Y. Aug. 7, 2006) (same).

Further, regardless of whether Shah's predictions turned out to have been accurate, he was simply relaying his own subjective understanding of the status of Signet's purchase orders, and his surmise regarding whether plaintiffs would be able to meet the orders in the future.  Such statements of belief or opinion about the future are not fraudulent.  *See In re Bristol-Myers Squibb Secs. Litig.*, 312 F. Supp. 2d 549, 558 (S.D.N.Y. 2004) (conference call statements regarding future growth are plainly opinions, not guarantees and not actionable); *Dooner v. Keefe, Bruyete & Woods, Inc.*, 157 F. Supp. 2d 265, 280 (S.D.N.Y. 2001) (fraud allegation based on prediction or promise of future IPO not actionable).

And, finally, even if the email constituted a misrepresentation — notwithstanding the Complaint's allegations showing that it was not —  it would still not rise to the level of egregious or culpable conduct necessary to maintain plaintiffs' claim.  "[M]isrepresentations alone do not constitute 'wrongful means' *per se*," when analyzing tortious interference claims under New York law.  *Friedman v. Coldwater Creek, Inc.*, 551 F. Supp. 2d 164, 170-71

18

(S.D.N.Y. 2008) aff'd 321 Fed. App'x 58 (2d Cir. 2009); *Semple v. Eyeblaster, Inc.*, No. 08 Civ.

9004, 2009 WL 2709281, at *4 (S.D.N.Y. Aug. 27, 2009) (misrepresentations were insufficient

to establish wrongful means and granting summary judgment as to tortious interference claim,

even though all other necessary elements were met).  As courts have consistently held, the use of

persuasive tactics by a business to convince a potential client or customer to select its goods or

services over a competitor's is insufficient to meet the "wrongful means" element.  *Carvel*, 3

N.Y.3d at 191; *G.L.M. Sec. & Sound, Inc. v. LoJack Corp.*, No. 10 Civ. 4701, 2011 WL

4594825, at *12 (E.D.N.Y. Sept. 30, 2011).  The Complaint makes clear that the alleged joint

venture between plaintiffs and defendants had ended, and that the parties' relationship was that

of competitors at the time Shah sent his email.  Compl. ¶ 17-19.  Thus, the Complaint does no

more than allege that the defendants sought to persuade a customer to utilize their services by

suggesting that they were more reliable than a competitor's services.

### 2.      Plaintiffs fail to allege a causal connection to their purported damages

The plaintiffs likewise have not made any factual allegations showing that they

actually lost business because of the email of any other alleged conduct by the defendants, as

required to state a claim for tortious interference.  *Ritani, LLC v. Aghjayan*, 880 F.Supp. 2d 425,

453 (S.D.N.Y. 2012) (dismissing tortious interference cause of action where the plaintiff failed

to allege any causal connection between the defendant's conduct and any actual lost business).

The Complaint does not allege that defendants took or stole any of the plaintiffs'

orders with Signet.  To the contrary, the plaintiffs acknowledge that they were able to fill the

orders by using a new manufacturer.  Compl. ¶ 37-39.  The plaintiffs' alleged damages stem

from their late fulfillment of the orders, not Shah's solicitation.  Compl. ¶ 35-42.  As we have

19

seen, a breach of a contractual obligation cannot support tortious interference.  *Carvel Corp.*, 3 N.Y.3d at 190  *Apotex Corp.*, 2019 WL 3066328, at *4.  So, the lack of particularized allegations demonstrating a causal connection between the email and the plaintiffs' alleged lost profits constitutes an additional, independently sufficient grounds for dismissal.  *Hollander v. Flash Dancers Topless Club*, 173 F.App'x 15, 18 (2d Cir. 2006)  ("Merely restating the requirements of [a claim] in the form of an allegation does not suffice to state a claim without some factual allegation from which proximately caused financial injury may be inferred.").

**D.      The Unfair Competition Claim is Insufficiently Pled**

New York courts recognize two theories of unfair competition: (1) palming off; and (2) misappropriation.  *Carson Optical Inc. v. eBay Inc.*, 202 F.Supp. 3d 247, 267 (E.D.N.Y. 2016) (citing *ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467 (2007)).  Palming off is the "sale of the goods of one manufacturer as those of another."  *Id.*  Misappropriation is the wrongful taking of "the skill, expenditures and labors of a competitor."  *Id*.  In other words, the defendant must have employed bad faith efforts to take a commercial advantage that belonged exclusively to the plaintiff.  *LopPresti v. Massachusetts Mut. Life Ins. Co.*, 30 A.D.3d 474, 476 (2d Dep't 2006).

Here, the plaintiffs assert a misappropriation claim.  But they do not allege wrongful means, nor any damages stemming from the alleged misappropriation.  Indeed, it is difficult to discern how the defendants misappropriated anything belonging to the plaintiffs at all.  So the unfair competition claims should be dismissed.

### 1.   A breach of contract does not constitute unfair competition

"When a purported unfair-competition claim in fact is based on a different legal entitlement, that articulated claim cannot survive." *Zino Davidoff SA v. Selective Distribution Intern. Inc.*, No. 07 Civ. 10326, 2013 WL 1245974, at \*11 (S.D.N.Y. Mar. 8, 2013). Specifically, an unfair competition claim cannot be premised on breach of contract. *Id.; Sandrino v. Michaelson Associates, LLC*, No. 10 Civ. 7897, 2012  WL 5851135, at \*10 (S.D.N.Y. November 19, 2012).  This is the case even where — as here — the plaintiff has not pled a contract claim. *See, e.g., Hui Quin Zhao v. Yu Qui Wang*, 558 Fed.Appx. 41, 43 (2d Cir. 2014) (affirming summary judgment dismissing plaintiff's tort claims that were based on a breach of contract and explaining "Zhao asserts no cause of action for breach of contract, and we decline to rule on the timeliness or merits of such a claim").

Here, the amended complaint alleges only that the defendants did not fulfill their promise to timely meet the plaintiffs' purchase orders.  The plaintiffs do not allege that defendants used the specifications and drawings provided by the plaintiffs to fulfill the plaintiffs' orders for their own gain.  The amended complaint only alleges that the purchase orders went unfulfilled.  Compl. ¶¶ 34-42.  Thus, the plaintiffs do not allege any damages specifically arising from the alleged misappropriation, which are required for them to maintain their claim for unfair competition. *Bancorp Services*, LLC 2016 WL 4916969, at \*9.

### 2.   The plaintiffs do not allege that defendants' alleged future business is the fruit of misappropriation

The plaintiffs do not allege any contractual non-compete agreement between the parties, let alone a confidential relationship that would prohibit competition. *V. Ponte and Sons,*

*Inc. v. American Fibers*, 222 A.D.2d 271, 271 (1st Dep't 1995 ("the counterclaim for unfair competition lacks the requisite elements of either a confidential relation between the parties or a valid agreement to refrain from…competition"); *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 209 (S.D.N.Y. 2008) (dismissing unfair completion claim even where the plaintiff "expended significant time, effort and funds to develop" several potentially lucrative business relationships"); *see also TIA LTD v. AT&T Corp.*, 280 F.3d 175, 198-199 (dismissing unfair competition claim and explaining that "had TIA wanted to purchase rights to a market free of competition from AT & T…as well as [AT&T's] equipment and services, a very different contractual arrangement…would have resulted").

The plaintiffs also do not allege that they had a protectable interest in any information to which the defendants had access.  Certainly, the plaintiffs do no allege that the defendants were privy to trade secrets, were bound by a confidentially agreement, or in any other way misappropriated information whose confidentiality the plaintiffs had taken special measures to protect and which was not generally available within the industry.  *See, e.g., Dow Jones v. International Security Exchange, Inc.*, 451 F.3d 295, 303 (2d Cir. 2006) (dismissing unfair competition claim and explaining that "because plaintiffs have permitted the buying and selling of the ETF shares, plaintiffs may not prevent exchanges from offering marketplaces for buyers and sellers to come together to effectuate their transactions");  *Fung Schwartz v. Center Corporation*, 17-CV-233, 2019 WL 4393022, at *10 (S.D.N.Y. 2019) ("Plaintiffs also do not allege that Defendants used that information in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means, and so have not alleged misappropriation").

22

Further, the Complaint is utterly devoid of any allegations that defendants actually used any information — whether confidential or not — to obtain future business from Signet. To the contrary, plaintiffs allege merely "upon information and belief" that defendants "have continued to do business with Signet/Zales since 2017."  Compl. ¶ 43.  In other words, the plaintiffs simply suppose — but are unable to allege specific facts actually supporting their surmise — that defendants may have utilized information obtained from them in allegedly doing subsequent business with Signet.  Such rank speculation fall well short of what is required to sustain a claim for unfair competition based on misappropriation.  *Ritani, LLC v. Aghjayan*, 970 F. Supp. 2d 232, 259 (S.D.N.Y. 2013) (dismissing unfair competition claim and holding that knowledge of confidential information was not sufficient to support claim); *Czech Beer Importers, Inc. v. C. Haven Imports, LLC*, No. 04 Civ. 2270, 2005 WL 1490097 at *7 (S.D.N.Y. June 23, 2005)  ("Although Plaintiff asserts that BBNP improperly provided Defendant with Plaintiff's confidential information, Plaintiff fails to allege that Defendant misappropriated the information from BBNP"); *Berman*, 580 F. Supp. 2d at 209 (same).

**E.      The Unjust Enrichment Claim is Insufficiently Pled**

Lastly, the unjust enrichment claim is infirm for numerous reasons.  To begin with, as discussed in Point II B above, the entire premise of the Complaint is that the defendants accepted but failed to fulfill orders for merchandise.  So, since these allegations sound in contract, the plaintiffs' unjust enrichment claim is unsustainable.  *Bazak Intern Corp*, 347 F. Supp. 2d at 4 ("If a valid, enforceable contract existed between the parties, then Bazak cannot recover under a theory of unjust enrichment").

23

Additionally, the Complaint is devoid of particularized allegations showing that the defendants have been enriched.  Certainly, the defendants did not profit from the delayed purchase orders, as the plaintiffs admit they fulfilled those orders through a new manufacturer. Compl.  ¶ 37-39.  Further, aside from pleading in conclusory fashion, upon information and belief, that defendants "have continued to do business" with Signet, there are no allegations that defendants have benefited from any business from Signet, let alone unjustly so.  Compl. ¶ 43. So, in addition to improperly re-characterizing what are at bottom contract claims, the unjust enrichment claims fails as it is speculative and entirely devoid of any non-conclusory predicate. *See Washington v. Kellwood Co.*, No. 05 Civ. 10034, 2009 WL 855652, at *11 (S.D.N.Y. Mar. 24, 2009) (dismissing unjust enrichment claim because "nowhere do Plaintiffs explain how Defendant was enriched, how the alleged enrichment came at Plaintiffs' expense, or why this alleged enrichment was inequitable"); *Am. Fin. Int'l Grp.-Asia, L.L.C. v. Bennett*, No. 05 Civ. 8988, 2007 WL 1732427, at *3 (S.D.N.Y. June 14, 2007) (dismissing unjust enrichment claim where "nothing in the complaint indicates that defendants received any personal benefit"); *Mina Inv. Holdings, Ltd. v. Lefkowitz*, 51 F. Supp.2d 486, 490 (S.D.N.Y. 1999) (same).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint in its entirety with prejudice.

24

Dated:  March 31, 2021

**HODGSON RUSS LLP**
*Attorneys for Defendants*

By:   s/Joshua Feinstein
           Joseph P. Goldberg
           Carmine J. Castellano
           Joshua Feinstein, of Counsel
605 Third Avenue, Suite 2300
New York, New York 10158
Telephone:  (212) 751-4300

25