UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/19/2021
```

-------------------------------------------------------------X

JDM IMPORT CO. INC., MG WORLDWIDE             :
LLC, and ASIA PACIFIC JEWELRY, L.L.C.,        :
                                              :
                              Plaintiffs,     :          20-CV-8759 (VEC)
                                              :
                  -against-                   :          OPINION AND ORDER
                                              :
SHREE RAMKRISHNA EXPORTS PVT., LTD.,          :
AMIT SHAH, and THE JEWELRY CO.,               :
                                              :
                              Defendants.     :
-------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

       Plaintiffs JDM Import Co., Inc. ("JDM"), MG Worldwide LLC ("MGW"), and Asia

Pacific Jewelry, L.L.C., have sued Defendants Shree Ramkrishna Exports Pvt., Ltd. ("SRK"),

Amit Shah, and The Jewelry Co. for: (1) tortious interference with business relations; (2) unfair

competition; and (3) unjust enrichment.  Am. Compl., Dkt. 21.  Defendants have moved to

dismiss Plaintiffs' amended complaint for lack of personal jurisdiction over all Defendants

pursuant to Rule 12(b)(2) and for failure to state a claim pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure.  Dkt. 26.  Plaintiffs oppose the motion.  Dkt. 27.  For the reasons

discussed below, Defendants' motion to dismiss is GRANTED, and the Amended Complaint is

DISMISSED without prejudice.

## BACKGROUND

       This federal case is now the fourth action pending between the parties.[1]  Plaintiffs are a

New York family-owned jewelry business that sells jewelry wholesale to major retailers in New

_____

[1]       J.G. Jewelry Pte. Ltd. ("JGJ") is a Singapore entity with "management and control" in India and is the
corporate embodiment of the parties' 2015–2017 joint venture.  Goldberg Decl., Dkt. 20, Ex. A.  On March 27,
2018, Plaintiffs, together with JGJ and one other related entity, commenced an action against The Jewelry Co., SRK,
and one other defendant in the Supreme Court of New York County under Index No. 651469/2018.  Id.  In that case,
the Plaintiffs allege that the Defendants used JGJ as a vehicle to steal tens of millions of dollars from the JDM

York and elsewhere in the United States.  Their clients include Signet Jewelers, a retailer that

owns the "Zales" brand of jewelry.  Am. Compl., Dkt. 21 ¶¶ 13–17.  Defendants SRK and The

Jewelry Co. are entities organized under Indian law and are based in India.  *Id*. ¶¶ 8–9.

Defendant Amit Shah is the CEO of The Jewelry Co. and resides in India.  *Id*. ¶ 7.

On April 1, 2015, the parties entered into a joint venture to create a worldwide diamond

jewelry business.  *Id*. ¶ 18.  From 2015 to 2017, Defendants manufactured goods to Plaintiffs'

specifications, which Plaintiffs then repackaged and delivered to customers throughout the

United States.  *Id.* ¶¶ 19–21.  In August 2017, Defendants unilaterally terminated the joint

venture but advised Plaintiffs that they would continue to manufacture and ship goods to them.

*Id.* ¶¶ 23–24.  Accordingly, Plaintiffs continued to place orders with Defendants between August

and October 2017 — including orders for Signet Jewelers' Zales brand.  *Id*. ¶¶ 25–28.

Plaintiffs allege that, after the dissolution of the parties' joint venture, Defendants "began

a deliberate and concerted effort to wrongfully interfere with [Plaintiffs'] existing and

prospective business relationships" — in particular, Plaintiffs' relationship with Signet/Zales —

and divert that business towards themselves.  *Id*. ¶¶ 29–33.  In support of their claim, Plaintiffs

point to an October 27, 2017 email from Defendant Shah to several Signet employees in which

Mr. Shah wrote: "I am sure you are aware that the partnership between MGW and SRK (us) has

been dissolved and unfortunately it has not ended well.  I understand that a lot of your PO's and

orders are held up in production which I don't think MGW will be able to deliver this season.  I

have a proposal for you to help you in this situation . . . ."  *Id*. ¶ 30.

---

Entities.  On April 23, 2018, SRK filed suit against JGJ in Singapore, alleging that it failed to pay for approximately
$23 million worth of diamonds and jewelry that SRK sold to JGJ.  Goldberg Decl., Ex. D.  A director of JGJ brought
a separate minority oppression lawsuit in Singapore against JGJ and Plaintiffs' principals, alleging, *inter alia*,
accounting irregularities and self-dealing.  Goldberg Decl., Ex. E.

According to Plaintiffs, Defendants deliberately failed to fulfill outstanding orders, including orders Plaintiffs placed for Signet/Zales, which required Plaintiffs to "scramble" to locate a new manufacturer prior to the 2017 holiday season. *Id*. ¶¶ 35–36. Plaintiffs further allege that "[a]lthough Plaintiffs located another manufacturer, Defendants' conduct damaged Plaintiffs' relationship with Signet/Zales, including by delaying Plaintiffs' production and delivery of Signet/Zales' orders." *Id.* ¶ 37. Finally, Plaintiffs allege that Defendants "unfairly and wrongfully utilized non-public information about Plaintiffs' customer orders" to "unlawfully compete with Plaintiffs for Signet/Zales' business" and, consequently, have "unjustly benefitted at the Plaintiff's expense." *Id*. ¶¶ 58–59, 66–67.

## DISCUSSION

### I. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

Defendants move to dismiss for lack of personal jurisdiction over all of the Defendants.[2] When responding to a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction. *See MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). When the motion to dismiss is decided on the basis of the pleadings (rather than on the basis of an evidentiary hearing), the plaintiff need make only a *prima facie* showing that jurisdiction exists. *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008).

Personal jurisdiction of a federal court sitting in diversity over a non-resident defendant is governed by the law of the state in which the court sits and by the limits of due process. *Eades v.*

---

[2]    In addition to challenging this Court's jurisdiction over all Defendants, Defendants argue that Plaintiffs' "group pleading" is insufficient to establish jurisdiction because it fails to distinguish the actions attributable to each individual defendant. *See* Defs. Mem. of Law, Dkt. 26 at 8. Because the Court finds that it lacks jurisdiction over defendants individually, it declines to decide whether Plaintiffs' complaint adequately distinguished the actions attributable to each defendant.

*Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015).  Accordingly, the Court must

engage in a "two-part analysis."  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171

F.3d 779, 784 (2d Cir. 1999).  The Court first looks to the long-arm statute of New York, the

forum state.  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).  If the exercise

of jurisdiction is appropriate under New York's long-arm statute, the Court must then determine

whether such an exercise comports with due process; a state may authorize personal jurisdiction

over an out-of-state defendant only if "the defendant has 'certain minimum contacts with [the

state] such that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice.'"  *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (alteration in original)

(quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)).

 In deciding a motion to dismiss for lack of personal jurisdiction, the Court may consider

materials outside the pleadings.  *See Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323

(S.D.N.Y. 2015).  "The court assumes the verity of the allegations 'to the extent they are

uncontroverted by the defendant's affidavits,'" *id*. (quoting *MacDermid*, 702 F.3d at 727), and

construes the jurisdictional allegations in the light most favorable to the plaintiff, *A.I. Trade Fin.,*

*Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993).  The Court need not accept either party's

legal conclusions as true nor will it draw "argumentative inferences" in either party's favor.  *See*

*Licci ex rel. Licci v. Lebanese Canadian Bank*, SAL, 673 F.3d 50, 59 (2d Cir. 2012) (citation

omitted).

### A.  General Jurisdiction Under C.P.L.R. § 301

 New York's long-arm statute provides for both general and specific jurisdiction.  A court

in New York may exercise general jurisdiction over an out-of-state defendant if the defendant

engages "in 'continuous, permanent, and substantial activity in New York.'"  *Wiwa v. Royal*

*Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000) (citation omitted); N.Y. C.P.L.R. § 301.
The Supreme Court in *Daimler* set a "high bar" for finding that the exercise of general
jurisdiction over an out-of-state corporation comports with due process.  *See Brown v. Lockheed
Martin Corp.*, 814 F.3d 619, 626–27 (2d Cir. 2016) (citing *Daimler*, 571 U.S. at 751).  An out-
of-state corporation is subject to general jurisdiction in a state "only where its contacts are so
'continuous and systematic,' judged against the corporation's national and global activities, that
it is 'essentially at home' in that state." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d
Cir. 2013) (quoting *Daimler*, 571 U.S. at 139).  Other than in "exceptional cases," a corporation
is "at home" only in its state of incorporation and in the state of its principal place of business.
*Id*.; *see also Brown*, 814 F.3d at 629 ("when a corporation is neither incorporated nor maintains
its principal place of business in a state, mere contacts, no matter how systematic and continuous,
are extraordinarily unlikely to add up to an exceptional case") (cleaned up).

      Here, neither SRK nor The Jewelry Co. is incorporated or headquartered in New York;
both are headquartered and incorporated in India.[3]  Sales to New York customers constitute 14
percent and 3 percent, respectively, of their annual business.  Dholakia Decl., Dkt 26-2 ¶ 2; Shah
Decl., Dkt. 26-1 ¶ 2.  Plaintiffs have not alleged any additional facts from which the Court could
infer that New York is the center of Defendants' activities or that they are otherwise "at home"
in the State.  Because "it is common for corporations to have presences in multiple states . . .
general jurisdiction would be quite the *opposite* of 'exceptional' if such contacts were held
sufficient to render the corporation 'at home' in the state." *Brown*, 814 F.3d at 630 (emphasis in
original).

      In short, this Court does not have general jurisdiction over Defendants.

---

[3]      Similarly, Defendant Shah is a citizen and resident of India, not New York.

## B.  Specific Jurisdiction Under C.P.L.R. § 302(a)(1)

Pursuant to C.P.L.R. § 302(a)(1), a court may exercise specific jurisdiction over a non-domiciliary that "in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state."[4]  "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Eades*, 799 F.3d at 168 (quoting *Licci*, 732 F.3d at 168).  With respect to the "transacting business" part of the analysis, courts look to "the totality of the defendant's activities within the forum." *Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortg. Inv'rs*, 510 F.2d 870, 873–74 (2d Cir. 1975).  The plaintiff's cause of action must also arise from the defendant's transaction of business in the state, which requires "an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Henderson v. INS*, 157 F.3d 106, 123 (2d Cir. 1998) (internal quotation marks omitted).

"Section 302(a)(1) is a 'single act statute,' which means that 'proof of one transaction in New York is sufficient to invoke jurisdiction.'" *High Street Capital Partners, LLC v. ICC Holdings, LLC*, No. 652592/2018, 2019 WL 2106093, at *2 (N.Y. Sup. Ct. May 14, 2019) (quoting *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006)).  The primary

---

[4]     Plaintiffs attempt to establish jurisdiction over Defendants SRK and the Jewelry Company through their purported New York agent, TJC Jewelry, Inc. ("TJC NY"), a corporation authorized to do business in New York that, during the parties' joint venture, maintained an office in and operated out of Plaintiff JDM's New York office. Am. Compl. ¶ 10.  But other than asserting, *ipse dixit*, that TJC was Defendants' agent in New York, Plaintiffs do not plead any facts from which the Court could reasonably infer an agency relationship, let alone any specific conduct by TJC NY that relates to the claims at issue here. *See Coast to Coast Energy, Inc. v. Gasarch*, 149 A.D.3d 485, 487 (1st Dep't 2017) ("To make a prima facie showing of 'control,' a plaintiff's allegations must sufficiently detail the defendant's conduct so as to persuade a court that the defendant was a 'primary actor' in the specific matter in question; control cannot be shown based merely upon a defendant's title or position within the corporation, or upon conclusory allegations that the defendant controls the corporation." (citations omitted)); *see also America/International 1994 Venture v. Mau*, 146 A.D.3d 40, 58 (2d Dep't 2016) (no jurisdiction even assuming agency relationship where the agent's conduct was not relevant to the claims at issue).

consideration for courts is not the quantity but "the quality of the defendants' New York

contacts." *Id*. (quoting *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007)). Accordingly, "the

purposeful creation of a continuing relationship with a New York corporation" supports the

exercise of personal jurisdiction. *Fischbarg*, 9 N.Y.3d at 380; *see also Chloe v. Queen Bee of*

*Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) ("proof of one transaction in New York is

sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as

the defendant's activities were purposeful and there is a substantial relationship between the

transaction and the claim asserted") (citation omitted).

Here, Defendants argue that they are not subject to personal jurisdiction in New York

because Plaintiffs' claims do not arise from business transacted in or goods or services supplied

within the State, but rather "from an email that was sent from India and was directed at non-New

York based employees of a company organized in Bermuda with headquarters in Ohio." Defs.

Mem. of Law, Dkt. 26 at 12. Thus, the complaint is "devoid of allegations showing how the

plaintiffs' claim is 'directly related to' and 'arise[s] from' business transacted in New York." *Id.*

Defendants further argue that Plaintiffs' claims for unfair competition and unjust enrichment are

"based on their conclusory allegations that defendants misappropriated confidential

information," but that "the Complaint contains no allegations showing how the alleged

misappropriation is sufficiently connected to business transacted in New York." *Id.*

In response, Plaintiffs assert four grounds for personal jurisdiction: (1) "Defendants SRK

and The Jewelry Co., through their personnel, had routine communications with Plaintiffs in

New York, including communications concerning the Signet orders that Plaintiffs placed with

Defendants"; (2) "Defendants shipped goods into New York for the Signet orders that were

filled"; (3) "Defendant Shah made frequent visits to JDM's New York offices throughout the

Joint Venture"; and (4) "Defendants had access 'to critical aspects of Plaintiffs' business'" and, "[t]o gain and maintain this access, Defendants sent e-mails to Plaintiffs in New York."  Pls. Mem. of Law, Dkt. 27 at 16–17.

While Plaintiffs have adequately pled that Defendants conducted business in New York, they have not shown that their claims arise from the business Defendants conducted in New York.  Thus, this Court does not have jurisdiction over Defendants pursuant to C.P.L.R. § 302(a)(1).

There is no real dispute that all three Defendants have conducted business in New York. From 2015 to 2017, Defendants SRK and The Jewelry Co. were engaged in a joint venture with Plaintiffs, New York-based companies, and regularly sent manufactured goods to TJC Jewelry, Inc. — a corporation authorized to do business in New York — at Plaintiff JDM's offices in New York.  Am. Compl. ¶¶ 18, 21.  By entering into a joint venture with New York-based companies and manufacturing and shipping goods into New York over the course of two years, Defendants SRK and The Jewelry Co. "purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007); *see also C. Mahendra (N.Y.), LLC v. Nat'l Gold & Diamond Ctr.*, 125 A.D.3d 454, 457–58 (1st Dep't 2015) (exercising personal jurisdiction over California-based diamond seller who placed several orders over two years from New York wholesaler).  Plaintiffs have also adequately alleged that Defendant Shah conducted business in New York because, during the joint venture, he "spent approximately one out of every six weeks at the JDM Entities' office in New York."  Am. Compl. ¶ 22.  The frequency of Mr. Shah's visits amounts to presence in New York that is not merely occasional or

casual, "but with a fair measure of permanence and continuity." *Patel v. Patel*, 497 F. Supp. 2d 419, 425 (E.D.N.Y. 2007) (citations omitted).

Plaintiffs have failed, however, to demonstrate that their claims arise out of Defendants' business activities in New York. *See Licci*, 673 F.3d at 66 (requiring "an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York") (citation omitted).[5] Plaintiffs' claims concern conduct that occurred *after* the conclusion of the parties' joint venture, namely: (1) Defendants' failure to fulfill Plaintiffs' orders for Signet/Zales; and (2) Mr. Shah's October 27, 2017 email to Signet employees.[6] *See* Am. Compl. ¶¶ 30–36. All but one of the facts Plaintiffs point to as support for there being jurisdiction over Defendants involve conduct that occurred *during* the joint venture, from April 2015 to August 2017, before Plaintiffs' causes of action arose. *See* Pls. Mem. of Law at 16–17; *see also Homeschool Buyers Club Inc. v. Brave Writer, LLC*, No. 19-CV-6046 (VSB), 2020 WL 1166053, at *5 (S.D.N.Y. Mar. 11, 2020) (finding no jurisdiction where the defendant had conducted limited business in New York *prior to* termination of the contract but because the plaintiff's claims focused on conduct after the contract was terminated, § 302(a)(1) required defendant's conduct in New York to occur "*after* the alleged improper termination of the contract") (emphasis in original).

The lone exception is Plaintiffs' claim that "Defendants shipped goods into New York for the Signet orders that were filled" between August and October 2017. *Id.* at 16. But Plaintiffs have not alleged any connection between these two, completed orders and the unfulfilled orders

---

[5]     Plaintiffs assert that C.P.L.R. 302(a)(1) requires only a "relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." Pls. Mem. of Law, Dkt. 27 at 16 (citing *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339 (2012)). But Plaintiffs fail to acknowledge what *Licci* made clear: this minimum standard effectively "limits the broader 'transaction-of-business' prong to confer jurisdiction only over those claims [that are] in some way arguably connected to the transaction." *Id.* at 340.

[6]     Mr. Shah sent this email from India, and it was not directed at individuals who were in New York. Shah Decl., Dkt. 26-1 ¶ 3.

that are at issue here — no shared contract or course of dealing, not even that Defendants, having shipped goods into New York before, were apt to do so again.  Accordingly, the fact that Defendants shipped goods into New York to fulfill past orders does not confer jurisdiction over claims unrelated to those shipments because that business is not clearly related to Plaintiffs' current claims.  *See, e.g.*, *Homeschool Buyers*, 2020 WL 1166053, at *5 ("Plaintiff has not sufficiently averred facts suggesting that Defendant has actually continued to transact business in New York in a manner giving rise to such claims"); *V Cars, LLC v. Israel Corp.*, 902 F. Supp. 2d 349, 364 n.13 (S.D.N.Y. 2012) ("[a] misappropriation claim cannot be said to arise from transactions of business in New York where a New York meeting was merely a link in the chain of events leading to the claim for which relief is sought" (cleaned up)).[7]

Because Plaintiffs have not adequately pled that their claims arise from Defendants' New York contacts, this Court does not have personal jurisdiction over Defendants pursuant to C.P.L.R. § 302(a)(1).

### C.  Specific Jurisdiction Under C.P.L.R. § 302(a)(3)

Plaintiffs also argue that Defendants are subject to specific jurisdiction under C.P.L.R. § 302(a)(3), which applies to a non-domiciliary who commits a tortious act outside the state causing injury within the state, and who: (1) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the forum; or (2) expects or should reasonably expect the act to have

---

[7]      In support of their argument for personal jurisdiction, Plaintiffs point to the fact that the New York state court found that it had personal jurisdiction over Defendants SRK and The Jewelry Co.  *See* Pls. Mem. of Law at 14, n.4 (referencing *JGJ Jewelry Pte. Ltd. v. Shree Ramkrishna Exports Pvt., Ltd.*, No. 651469/2018, NYSCEF Doc. No. 247 at 11–15 (July 1, 2020)).  Plaintiffs' reliance is misplaced.  In the state case, Plaintiffs' claims arise out of the joint venture itself: they allege that Defendants "drained tens of millions of dollars from the joint venture, before unilaterally withdrawing from it and then denying its existence." *JGJ Jewelry*, No. 651469/2018, Doc. No. 249 at 2. Given that claim, Defendants' contacts with New York during the life of the joint venture are sufficient to confer personal jurisdiction because they are substantially, if not directly, related to the claims asserted.

consequences in the forum and derives substantial revenue from interstate or international

commerce.  N.Y. C.P.L.R. § 302(a)(3).  For commercial torts, the "situs of injury" is determined

by locating the "original event which caused the injury."  *Bank Brussels*, 171 F.3d at 791 (citing

*Hermann v. Sharon Hosp., Inc.*, 135 A.D.2d 682, 683 (2d Dep't 1987)).  Although "lost sales or

customers can satisfy the 'injury within New York' requirement under Section 302(a)(3)(ii),

those lost sales must be in the New York market, and those lost customers must be New York

customers."  *Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, 568 F. Supp. 2d 329, 336

(S.D.N.Y. 2008).

Defendants argue that "the critical events occurred in India, where Shah allegedly drafted

the email, or in Ohio or Bermuda, where the customer at whom the email was directed is based."

Defs. Mem. of Law at 11.  According to Defendants, the fact that those alleged actions may have

economically harmed Plaintiffs, who are domiciled in New York, is irrelevant.  *Id.*  Plaintiffs

respond that their injury occurred in New York because "the state in which the plaintiff lost

business or customers is the place of injury."  Pls. Mem. of Law at 18 (citing, *inter alia*, *Bank*

*Brussels*, 171 F.3d at 793).  They further argue that "the critical question . . . is where the first

effect of the tort was located that ultimately produced the final economic injury."  Here, they

argue, "Defendants' duplicitous conduct seemingly began when they contacted Plaintiffs in New

York to terminate the Joint Venture."  *Id.* at 19 (citations omitted).

Although Plaintiffs assert that they were injured in New York, they allege no facts from

which the Court can reasonably infer that they lost any sales or customers in New York.[8]  Am.

Compl. ¶ 40; *see also* Pls. Mem. of Law at 19.  The only specific business injuries alleged in the

---

[8]      Because Plaintiffs have not pled loss of sales or customers in New York sufficient to demonstrate injury in
the state, this Court declines to decide what constitutes "the original event which caused the injury" — Defendants'
termination of the joint venture, Defendants' failure to fulfill Plaintiffs' orders, or Mr. Shah's email to Signet
employees.

complaint relate to Signet, a Bermuda-based company headquartered in Akron, Ohio.  *See* Am.
Compl. ¶¶ 38–41; Defs. Mem. of Law at 6 (citing Goldberg Decl., Dkt. 20 ¶ 6).  While "there is
no question that plaintiffs [alleged] some harm in New York in the sense that any sale lost
anywhere in the United States affects their profits . . . that sort of derivative commercial injury in
the state is only the result of plaintiffs' domicile here," *Am. Eutectic Welding Alloys Sales Co. v.
Dytron Alloys Corp.*, 439 F.2d 428, 433 (2d Cir. 1971);[9] the fact that the Plaintiffs are domiciled
in New York is not sufficient to confer personal jurisdiction over Defendants, *Thackurdeen v.
Duke Univ.*, 130 F. Supp. 3d 792, 804 (S.D.N.Y. 2015), *aff'd*, 660 F. App'x 43 (2d Cir. 2016).

In short, C.P.L.R. § 302(a)(3) does not provide a basis for this Court to exercise personal
jurisdiction over Defendants.

### D.  Due Process

Even if the Court had jurisdiction pursuant to New York's long-arm statute, asserting
personal jurisdiction over Defendants would not comport with constitutional due process.  To
exercise personal jurisdiction over an out-of-state defendant, the Due Process Clause requires
that the defendant have "certain minimum contacts with [the forum state] such that the
maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"
*Int'l Shoe*, 326 U.S. at 316 (citations omitted).  In evaluating whether a defendant has sufficient
minimum contacts, the "crucial question is whether the defendant has purposefully avail[ed]
itself of the privilege of conducting activities within the forum state" such that he "should
reasonably anticipate being haled into court there."  *Best Van Lines*, 490 F.3d at 242–43 (citing

---

[9]     Plaintiffs cite *American Eutectic* for the proposition that there can be injury in New York when a plaintiff
loses out-of-state customers, so long as there is sufficient "discernible local impact of the commercial injury to
plaintiff" in New York.  *See* Pls. Mem. of Law at 19 (citing *Am. Eutectic*, 439 F.2d at 435).  But the statement on
which Plaintiffs rely was *dicta*, a musing by the Second Circuit that "[p]erhaps the case would be different if the
discernible local impact of the commercial injury to plaintiffs were greater, e.g., destruction of plaintiffs' business in
New York by the loss of out-of-state customers, although *we express no view as to that*."  *Am. Eutectic*, 439 F.2d at
435 (emphasis added).

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Because Defendants' conduct underlying Plaintiffs' claims — their failure to fulfill Plaintiffs' orders for Signet/Zales and Mr. Shah's email — all took place outside of New York, the only relevant jurisdictional contacts with the forum are the harm to Plaintiffs, *i.e.*, Plaintiffs' alleged lost sales and business with Signet. Accordingly, the "effects test" theory of personal jurisdiction applies. *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 87 (2d Cir. 2018). Pursuant to the effects test, a court must inquire whether the defendant "expressly aimed" its conduct at the forum; mere foreseeability of injury in the state will not suffice. *Id.* Here, Defendants did not aim their conduct, tortious or otherwise, at New York: Mr. Shah's email was not directed at any Signet or Zales employees in the State, and Plaintiffs do not adequately allege that their lost business included customers or sales *in New York*, *see infra* at 11–12. Accordingly, there is simply no "meaningful connection" in this case between New York and Defendants' "suit-related conduct." *Karoon v. Credit Suisse Grp. AG*, No. 15-CV-4643, 2016 WL 815278, at *4 (S.D.N.Y. Feb. 29, 2016); *see also Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State.").

In short, even if New York's long-arm statute were to permit the Court to exercise jurisdiction, due process would prevent it. Accordingly, Plaintiffs' Amended Complaint is dismissed for lack of personal jurisdiction over any Defendant.

## II.  Defendants' Motion to Dismiss for Failure to State a Claim

Defendants also move to dismiss under Rule 12(b)(6), arguing that Plaintiffs have failed to plead sufficiently any of their three claims.[10]  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  A claim is facially plausible when the factual content pled allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).  When considering a Rule 12(b)(6) motion to dismiss, the Court draws all reasonable inferences in the light most favorable to the plaintiff.  *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted).  The Court is not required, however, to "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### A.  Count One: Tortious Interference with Business Relations

Count One of Plaintiffs' complaint alleges that Defendants "intentionally interfered with and undermined the JDM Entities' existing and prospective business relationships with Signet Jewelers, and particularly with Zales." Am. Compl. ¶ 49.  To state a claim for tortious interference with business relations, a plaintiff must adequately allege that: (1) it had a business relationship with a third party; (2) the defendant intentionally interfered with that relationship;

---

[10]    This case is being dismissed on jurisdictional grounds and is, therefore, being dismissed without prejudice. If the Court had jurisdiction, the claims would be dismissed with prejudice as Plaintiffs have, despite two attempts, failed to state a claim against Defendants.

(3) the defendant acted for a wrongful purpose, out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to plaintiff's relationship. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006) (citing *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003)).[11]

Defendants argue that Plaintiffs have not stated a claim for tortious interference for two reasons: (1) Plaintiffs failed to allege that Defendants' conduct constituted wrongful means, *i.e.*, that Defendants acted solely out of malice, for a wrongful purpose, or with dishonest, unfair, or improper means, Defs. Mem. of Law at 16–19; and (2) Plaintiffs failed to allege adequately that they actually lost business as a result of Defendants' conduct. *Id.* at 19–20.  In response, Plaintiffs assert that "Defendants created and weaponized the production 'holdup' to secretly and tortiously interfere with Plaintiffs' business relationship with Signet Jewelers."  Pls. Mem. of Law at 13 (citing Am. Compl. ¶¶ 30–37).  Plaintiffs further insist that "Defendants were responsible for that holdup," "misled Signet as to its true cause," and "wrongly used insider knowledge gained during the Joint Venture to unlawfully steal Signet's business."  *Id.* (citing Compl., Dkt. 1 ¶¶ 57–58, 65–67).

The "wrongful means" element of a tortious interference claim sets a "high bar," *Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262 (2d Cir. 2015); a plaintiff must allege facts from which

---

[11]   As a general rule, tortious interference claims that are duplicative of contract claims are precluded.  *See, e.g.*, *Uitz v. Lustigman Firm, P.C.*, No. 13-CV-6040 (RMB), 2014 WL 3767056, at *2 (S.D.N.Y. July 28, 2014) ("[A] simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.") (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987)).  The same is true for claims of unfair competition.  *See, e.g.*, *Orange Cnty. Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 558 (S.D.N.Y. 2007) ("Similarly, no unfair competition claim lies where its underlying allegations are merely a restatement, albeit in slightly different language, of the 'implied' contractual obligations asserted in the cause of action for breach of contract.") (quoting *Clark-Fitzpatrick*, 70 N.Y.2d at 389) (cleaned up).  Defendants argue that Plaintiffs have repackaged substantive contract claims as tort claims in order to avoid liability in the parallel state court and Singapore actions.  *See* Defs. Mem. of Law at 15.  The Court is inclined to agree because Plaintiffs' claims rest on Defendants' failure to fulfill orders that Plaintiffs had placed.  Nevertheless, because Plaintiffs have not asserted a claim for breach of contract in this action, the Court will consider their tort claims as pled.

the Court can plausibly infer that the defendant's conduct amounted to a crime or an independent tort.  *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 106 (2d Cir. 2012).  Plaintiffs have not done that.  Their allegations that Defendants intentionally failed to fulfil orders and "weaponized the production 'holdup'", Pls. Mem. of Law at 13, are conclusory and unsupported by facts.[12]  Indeed, Plaintiffs plead only one fact as the basis for inferring that Defendants intentionally interfered with Plaintiffs' relationship with Signet: Defendant Shah's October 27, 2017 email to employees of Signet.  Am. Compl. ¶¶ 29–33.  But that email alone,[13] absent other evidence of tortious conduct, cannot support Plaintiffs' claims of a "scheme" by Defendants to harm Plaintiffs.[14]

Plaintiffs also fail to allege that Defendants' conduct caused them to lose business. While Plaintiffs have alleged that "(i) they have sold jewelry to Signet since 2003; and (ii) that Defendants' misconduct in late 2017 interfered with that relationship and directly caused a significant revenue reduction," Pls. Mem. of Law at 8 (citing Am. Compl. ¶¶ 15, 52–53), the causal connection asserted is not supported by any facts.  Plaintiffs do not allege that Defendants took or stole any of Plaintiffs' business with Signet.  And, while Plaintiffs assert that they had to pay late fees to Signet/Zales and expend time and effort to repair the relationship, they do not

---

[12]     The Complaint simply reiterates the elements of the claim: "Defendants intentionally interfered with and undermined the JDM Entities' existing and prospective business relationships with Signet, . . . used wrongful, dishonest and/or improper means, and acted with malicious intent, . . . [and] communicated with Signet/Zales in a false, fraudulent, dishonest and/or improper manner . . ." *See* Am. Compl. ¶¶ 49–52.

[13]     The email from Shah admittedly has an ominous tone, making it possible that Defendants actually did tortiously interfere with Plaintiffs' business, but an ominous tone in a single email does not push the allegations in the complaint "across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[14]     Plaintiffs insist that Shah's email is "symptomatic of Defendants' calculated campaign of wrongful interference with Plaintiffs' business," and that "discovery will reveal other communications with Signet, and that others at Signet became aware of Mr. Shah's e-mail."  *See* Pls. Mem. of Law at 5–6.  But this assertion is not supported by facts in the complaint.  *See Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 204 (3d Cir. 2006) (the point of discovery is to uncover evidence of the facts pled in the complaint, not to "find a cause of action").

provide any support for their assertion that Signet/Zales reduced its business with Plaintiffs *because of* anything Defendants said or did.  Thus, Plaintiffs have failed to allege adequately that Defendants' conduct caused Plaintiffs' losses.

For all these reasons, Plaintiffs have failed to state a claim for tortious interference with business relations.

### B.  Count Two: Unfair Competition

Count Two of Plaintiffs' complaint alleges that Defendants engaged in unfair competition by misappropriating Plaintiffs' confidential information — "including but not limited to full customer style histories, production methods, order statuses, and cost breakdowns of all items sold" — and using that "information to unlawfully compete with Plaintiffs for Signet/Zales' business."  Am. Compl. ¶¶ 57–59.  "To state a claim for misappropriation of confidential information, a plaintiff must allege that the defendant used the plaintiff's confidential information for the purpose of securing a competitive advantage."  *Reed Const. Data Inc. v. McGraw-Hill Companies, Inc.*, 745 F. Supp. 2d 343, 352 (S.D.N.Y. 2010) (citations omitted). The plaintiff must also allege that the defendant displayed some element of bad faith in doing so. *Pulse Creations, Inc. v. Vesture Grp., Inc.,* No. 15 CIV 2496 (KPF), 2015 WL 9581782, at *6 (S.D.N.Y. Dec. 30, 2015) (citing *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 485 (2d Cir. 2005)).

Defendants argue that Plaintiffs fail to state a claim for unfair competition because Plaintiffs "do not allege wrongful means, nor any damages stemming from the alleged misappropriation [of confidential information]."  Defs. Mem. of Law at 20.  The Court agrees. While Plaintiffs allege that Defendants misappropriated confidential information in bad faith, their claim is conclusory and contains no facts from which the Court could infer such a

conclusion.  *See* Am. Compl. ¶¶ 60–61, 63 (simply restating the elements of a misappropriation

claim).  Plaintiffs have also not adequately alleged that Defendants used confidential information

from the Plaintiffs for the purpose of securing a competitive advantage.  Plaintiffs allege that

Defendants had *access* to critical aspects of their business, including non-public information

regarding the specifications of Signet/Zales orders from Plaintiffs.  Am. Compl. ¶¶ 57–58.[15]  But

mere knowledge of confidential information alone does not suggest that Defendants used it for

their own commercial advantage, *see Ritani, LLC v. Aghjayan*, 970 F. Supp. 2d 232, 259

(S.D.N.Y. 2013), and Plaintiffs pled no other facts from which the Court can plausibly infer that

Defendants used information gained from Plaintiffs in its business with Signet/Zales or with

anyone else.

> Accordingly, Plaintiffs have failed to plead a claim of unfair competition.

### C.    Count Three: Unjust Enrichment

> Count Three of Plaintiffs' complaint purports to allege a claim for unjust enrichment.

Am. Compl. ¶¶ 65, 67.  To state a claim for unjust enrichment under New York law, a plaintiff

must allege that: (1) the defendant was enriched, (2) at the plaintiff's expense, and (3) "that

equity and good conscience require restitution."  *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir.

2000) (cleaned up).  Unjust enrichment is not a "catchall cause of action to be used when others

fail"; "[i]t is available only in unusual situations when, though the defendant has not breached a

contract nor committed a recognized tort, circumstances create an equitable obligation running

from the defendant to the plaintiff."  *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).

---

[15]    Plaintiffs do not allege that Defendants obtained this information "in breach of an agreement, confidential
relationship or duty, or as a result of discovery by improper means."  *Fung-Schwartz v. Cerner Corp.*, No. 17-CV-
233 (VSB), 2019 WL 4393022, at *10 (S.D.N.Y. Sept. 13, 2019).  The information was made available to
Defendants in the normal course of the parties' joint venture and, even after the joint venture ended, because
Defendants continued to fulfill orders for Plaintiffs.  Am. Compl. ¶¶ 19–20, 24–28.

Defendants argue that Plaintiffs' claim is really for breach of contract and that, under New York law, a party to a binding contract may not recover for unjust enrichment. Defs. Mem. of Law at 23 (citing *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 347 F. Supp. 2d 1, 4 (S.D.N.Y. 2004)). Defendants further argue that Plaintiffs fail to allege facts from which the Court can infer that Defendants have been enriched. *Id.* at 24. Plaintiffs respond that "Defendants violated legal duties independent of any contractual breach" by "creat[ing] and weaponiz[ing] the production 'holdup' to secretly and tortiously interfere with Plaintiffs' business relationship with Signet Jewelers," and by misappropriating "insider knowledge gained during the Joint Venture to unlawfully steal Signet's business." Pls. Mem. of Law. at 12–13.

Plaintiffs have not alleged sufficient facts from which the Court can infer that Defendants were actually enriched at Plaintiffs' expense.[16] Plaintiffs allege only that Defendants' non-fulfilment of orders damaged Plaintiffs' relationship with Signet, and that "upon information and belief . . . Defendants have continued to do business with Signet/Zales since 2017." Am. Compl. ¶¶ 37, 43. Apart from these and other conclusory statements, *see, e.g.*, *id.* ¶¶ 65–67, there is nothing from which the Court could infer that Defendants took business that was previously Plaintiffs' or were otherwise unjustly enriched at Plaintiffs' expense, let alone that equity and good conscience require restitution. *See Ainbinder v. Potter*, 282 F. Supp. 2d 180, 190 (S.D.N.Y. 2003) ("[e]ven reading the pleadings liberally, the plaintiffs have not coherently alleged how the defendants were unjustly enriched at the plaintiffs' expense"); *Mina Inv. Holdings, Ltd. v. Lefkowitz*, 51 F. Supp. 2d 486 (S.D.N.Y. 1999) ("Plaintiffs failed to allege, in anything other than conclusory terms . . . the enrichment sustained by [Defendant], and the manner in which that enrichment was at Plaintiffs' expense.").

---

[16] Because this conclusion is, by itself, fatal, the Court need not decide whether a valid contract existed.

19

In short, Plaintiffs have failed to state a claim for unjust enrichment.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  All claims against Defendants are DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction. The Clerk of Court is respectfully directed to close the open motion at docket entry 26 and to CLOSE the case.

**SO ORDERED.**

Date:  **November 19, 2021**
      **New York, New York**

                           **VALERIE CAPRONI**
                           **United States District Judge**